Dear Ms. Wall:
This office is in receipt of your request for an opinion of the Attorney General in regard to a commissioner's appointment and service on the Pontchartrain Levee Board District.
You indicate in 1997 Mr. Baptiste was appointed by the Governor to act as commissioner on the levee board and confirmed by the Senate, but later that year he was replaced by Mr. Kane who resigned in 2000. On June 15, 2000 Governor Foster appointed Mr. Baptiste to return and replace Mr. Kane. However, when the appointments for the levee board were confirmed in June of 2001 Mr. Baptiste's name was not confirmed by the Senate. To the levee district's belief Mr. Baptiste had no actual knowledge of the failure of his confirmation, but in November of 2001 when the levee district office received documentation regarding status and seat information of the board and commissioners, it was noted that Mr. Baptiste's name was not listed. The levee district office forwarded by fax the failure of the listing to the Louisiana State Senate, attaching a copy of the Governor's second appointment of Mr. Baptiste for the vacant seat of Mr. Kane.
After this notice to the Senate, the levee district was under the assumption that the appointment of Mr. Batiste was valid, and that his name not being listed for senate confirmation was an oversight. Accordingly, Mr. Baptiste continued to serve and was paid for his services which included his salary of $8,442.06 and per diem and expenses of $314.44.
In May of 2004, it was brought to the attention of the Pontchartrain Levee District that his name was not listed under Senate confirmations in 2001, and Mr. Baptiste voluntarily discontinued his services.
You point out that during the entire tenure of Mr. Baptiste acting as commissioner, no action taken pursuant to a vote was affected by one vote, and therefore no action was dependent upon Mr. Baptiste's vote in his service as commissioner.
You ask whether or not Mr. Baptiste's service as commissioner was indeed valid under R.S. 38:304 and any other applicable Louisiana law, and if not, what action if any should be taken regarding the payment of funds to Mr. Baptiste under his good faith service.
In Atty. Gen. Op. 90-136 this office noted that Atty. Gen. Op. 88-344 had held that the City could not pay retroactive compensation to City employees for services previously compensated, but found an additional question was being raised in the instant request as to whether the City was obligated to seek reimbursement of those payments when both the City and the employees were acting in good faith in making and receiving the payments.
To this question this office concluded, "It is the opinion of this office that the City of Harahan is not obligated to seek reimbursement, but may do so at its discretion." It was noted, "Since the payment was made through mistake, the Mayor and Board of Alderman of the City of Harahan must decide whether to reclaim what has been paid."
In Atty. Gen. Op. 03-444 overpayment of state employees was involved, and this office was asked if a state agency would be in violation of Louisiana Law if no recoupment efforts were made. In response to this question this office reasoned "overpayment, a payment for something the employee did not earn" is prohibited by the Constitution and the agency must exercise every reasonable means to recover overpayment, and reasonable means must be determined on a case-by-case basis and on sound practices and principles.
Additionally, this office observed in Atty. Gen. Op. 89-408 that appointments by the Governor must be confirmed by the Senate before the end of the regular session, but an unconfirmed Commissioner may legally serve on an interim basis until the end of the regular session. It was stated, "The legal efficacy of the interim appointment dissolves at the end of the regular session if the appointment is not confirmed by the Senate, and the appointee may not be reappointed by the Governor during the recess of the legislature."
The statement that an "unconfirmed Commissioner may legally serve on an interim basis" demonstrates that this service by Mr. Baptiste was compensable, and such payment may be distinguished from seeking recoupment for "overpayments".
Moreover, we do not believe the board is mandated to seek reimbursement after the Senate's session inasmuch as the payments were made through a mistake of both the board and the appointee, but more importantly, the work was performed as Mr. Baptiste continued to fill the position, and therefore the payments were earned because he was a De Facto Commissioner.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
By: ____________________________
 BARBARA B. RUTLEDGE Assistant Attorney General
CCF/bbr